CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/14/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MAXINE S., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:17-cv-55 |
| ) | |
| v. ) | |
| ) | By: Hon. Robert S. Ballou |
| NANCY A. BERRYHILL, ) | United States Magistrate Judge |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Maxine S. ("Maxine") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Maxine alleges that the Administrative Law Judge ("ALJ") erred by failing to account for her need for a cane in the residual functional capacity ("RFC") and improperly determined that her subjective reports of debility were inconsistent with the objective medical evidence. Accordingly, I **RECOMMEND DENYING** Maxine's Motion for Summary Judgment (Dkt. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Maxine failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Maxine protectively filed for DIB and SSI on August 26, 2013 and November 14, 2013, respectively, claiming that her disability began on June 1, 2013. R. 189–203. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 67–68, 87–88. On April 22, 2016, the ALJ held an administrative hearing to consider Maxine's disability claim. R. 43–66. Maxine was represented by an attorney at the hearing which included testimony from Maxine, her attorney, and vocational expert Jeannie Deal. Id.

On June 2, 2016, the ALJ entered her decision analyzing Maxine's claim under the familiar five-step process,[2] and denying Maxine's claim for disability. R. 21–37. The ALJ found that Maxine suffered from the severe impairments of: degenerative disc disease, sacroiliac joint dysfunction, osteoarthritis of the left knee post-surgery, adhesive capsulitis of the right shoulder,

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

and obesity. R. 24. The ALJ further found that Maxine retained the RFC to perform light work but can (1) occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; (2) never climb ladders, ropes, or scaffolds; (3) occasionally push/pull with the left lower extremity and reach overhead and push/pull with the right upper extremity; (4) occasionally be exposed to extreme cold, vibrations, and hazardous conditions including unprotected heights and moving machinery; and (5) only work with jobs with a sit/stand option every 30 minutes, as long as she remains on task. R. 28.

The ALJ determined that Maxine could not return to her past relevant work as a waitress. R. 35. However, the ALJ determined that Maxine could perform jobs that exist in significant numbers in the national economy, such as cashier II, counter clerk, or office helper. R. 36. Thus, the ALJ concluded that Maxine was not disabled. R. 37.

Maxine appealed the ALJ's decision to the Appeals Council, but her request for review was denied. R. 1–3. This appeal followed.

## ANALYSIS

Maxine argues that that the ALJ erred by failing to incorporate her need for a cane in the RFC and that the ALJ improperly determined that her subjective reports of the extent of her disabling conditions were inconsistent with the objective medical evidence.

**Relevant Medical Evidence**

Maxine fell down the stairs on June 2, 2013, injuring her left knee, buttocks, and back. R. 472. Maxine told John Alfieri, M.D., on June 3, 2013 that she could not walk. R. 473. Dr. Alfieri found tenderness to palpation in her left knee and buttock area. Id. X-rays showed no bone fractures in her left leg or back. R. 474. The X-ray of Maxine's back showed normal spinal alignment, no scoliosis or spondylolisthesis, slightly diminished disc space height at L5-S1, facet

degenerative changes at L4-5 and L5-S1, and a normal sacroiliac joint. R. 402. On June 4, 2013, Maxine saw Edward J. Lewis, M.D., who gave her a note temporarily excusing her from work, referred her to physical therapy, and prescribed Lortab, Flexril, and Mobic. R. 399. Dr. Lewis explained that an MRI may be necessary. Id.

Maxine returned to Dr. Lewis on July 9, 2013, reporting persistent pain in her lower back, left hip, and left knee. R. 403. Maxine explained that physical therapy had not helped her pain. Id. An MRI of Maxine's left knee on July 17, 2013 showed a small medial meniscus tear, myxoid degeneration of both menisci and the ACL and PCL, prominent joint effusion, subcutaneous edema of the anteromedial and anterolateral knee, a ligamentous strain, and a small Bakers cyst. R. 406. An MRI of Maxine's lumbar spine on the same day showed "[m]ild multilevel degenerative disc disease but no significant noncompressive abnormality." R. 408. Maxine followed up with Dr. Lewis on July 30, 2013, reporting pain in her lower back that is only minimally improved by narcotic medication. R. 409. Maxine stated that the pain is exacerbated by bending and lifting but improves with rest. Id. Dr. Lewis explained that surgery may be necessary to repair Maxine's meniscus tear. Id.

Maxine saw Joyce L. Huerta, M.D., on August 13, 2013, reporting some improvement in her low back pain after a left L5-S1 transforaminal epidural steroid injection. R. 415. Dr. Huerta noted that Maxine experiences mild to moderate pain in her lower back that is exacerbated by extension but improves with rest. Id.

Maxine returned to Dr. Huerta on September 3, 2013 for persistent lower back pain. R. 420. Maxine explained that neither physical therapy nor injections have helped her pain. Id. Dr. Huerta found no pain, weakness, or paresthesia in Maxine's lower extremities but found her lower back tender to palpation in several areas and that her lower extremities had normal

neurovascular and motor functions. Id. Dr. Huerta scheduled Maxine for an intra-articular cortisone injection to her left SI joint and continued her on her current medications. Id.

Maxine saw John W. Barnard, Jr., M.D., on September 25, 2013 for a second opinion on her left knee. R. 425. She complained of pain and increased swelling from walking and reported that she was able to return to work as a waitress on September 21, 2013. Id. On October 4, 2013, a second left knee MRI showed edema in the ACL suggestive of a prior sprain, an intact PCL, mild chondromalacia patella with slight lateral displacement, small joint effusion, no full-thickness cartilage loss, no fractures, and no Bakers cyst. R. 429.

Maxine saw Dr. Huerta on October 15, 2013, reporting pain with bending and lifting activities, but improved by rest. R. 430. Dr. Huerta found that Maxine's lower back was tender, normal functioning in her lower extremities, "near-full" range of motion of her lower back, and stiffness and mild discomfort "at the extreme of the range of motion with flexion and extension." Id. Maxine returned to Dr. Huerta on October 28, 2013 to discuss the results of her October 4, 2013 MRI. R. 433. Maxine reported continued pain in her left knee. Id. Dr. Huerta found that Maxine had an antalgic gait and her left knee caused "[m]ild pain and crepitus with patellofemoral compression." R. 433–34. Dr. Huerta diagnosed left knee chondromalacia and medial meniscus tear and administered an injection to Maxine's left knee. R. 433. Dr. Huerta noted that if the injection is ineffective, surgery may be necessary. Id.

On November 12, 2013, Maxine saw her treating physician, Rhonda B. Algeier, M.D., for pain in her right shoulder. R. 384. Maxine stated that the pain is localized and runs through her neck. Id. Upon examination, Maxine had glenohumeral joint tenderness. R. 386.

Maxine underwent surgery on her left knee on December 13, 2013 after Dr. Barnard found that her left knee symptoms were not alleviated by conservative treatment. R. 437. Dr.

5

Barnard conducted a partial medial meniscectomy, a minimal chondroplasty of the medial femoral condyle, and a debridement of degenerative ACL tear. Id. Maxine followed up with Dr. Barnard on December 26, 2013, reporting that she was "not doing well." R. 450. Dr. Barnard found pain and moderate swelling in the knee, but she reported that the pain is "rare" and that overall she is improving. Id. Dr. Barnard found that Maxine walked without an assistive device, but prescribed her a cane. Id. Dr. Barnard found Maxine's range of motion in her left knee was acceptable, motor and sensory examinations were grossly intact, and the wound was healing well. R. 451.

Maxine returned to Dr. Barnard on January 17, 2014, reporting swelling and pain in her left knee and that she has only slightly improved since surgery. R. 454. Dr. Barnard found that she had a normal, non-antalgic gait and recommended that Maxine use an exercise bike, avoid impact load activities, and perform stretches in the shower. R. 454, 456. Maxine also reported pain and stiffness in her right shoulder that progressed over the course of several years. Id. Maxine explained that her right shoulder pain is most severe at night. Id. Maxine stated that an injection she received in November 2013 helped her pain. Id. X-rays showed mild acromioclavicular degenerative changes and some calcification along the anterior lateral acromion. R. 455. Dr. Barnard performed a subacromial injection in Maxine's right shoulder. Id.

Maxine followed up with Dr. Barnard for her right shoulder pain on March 24, 2014, explaining that the injection she received in January 2014 helped greatly. R. 459. Maxine reported pain when she slept on her right side, but overall explained that she "is much less symptomatic and is able to manage." Id. Maxine also reported "extreme" back pain. Id. Dr. Barnard found that Maxine's shoulder was doing well, and that she had normal reflexes and motor strength in her lower extremities with diminished sensation in her left medial calf. Id. Dr.

6

Barnard suggested that Maxine see a neurologist for bilateral numbness and tingling in her lower extremities. Id.

On July 7, 2014, Maxine returned to Dr. Algeier and reported pain in her right shoulder that had been bothering her for a week. R. 534. Maxine stated that a previous injection in her right shoulder reduced her pain. Id. Dr. Algeier diagnosed glenohumeral joint tenderness with pain that presents diffusely on the trapezius. R. 536. Dr. Algeier injected Maxine's right arm with depomedrol and explained that she would refer her to a specialist if her right shoulder symptoms persist. R. 537.

Maxine saw Dr. Huerta on January 20, 2015 for an electrodiagnostic test on her left leg to evaluate potential lumbosacral radiculopathy. R. 586. Maxine reported low back pain with radiating numbness, tingling, and burning in her left leg. Id. Maxine stated that her left leg is so weak that it collapses at times, and "[n]othing seems to make it better or worse." Id. The nerve conduction study of Maxine's left leg was normal. Id. Dr. Huerta explained that "[t]here is not [sic] electrodiagnostic evidence of a left lower extremity sciatic mononeuropathy, lumbosacral radiculopathy, lumbosacral plexopathy, or peripheral neuropathy based on today's examination." Id.

Maxine saw Kamal A. Chantal, PA-C, on February 6, 2015 for her lower back and left leg pain. R. 583–85. Maxine reported sharp, constant pain in her back that she rated as a 10/10. R. 583. Maxine reported that the pain has been getting worse over the last few months, and is exacerbated by standing. Id. Maxine had an MRI on February 24, 2015, which showed multilevel facet arthrosis throughout the lumbar spine, no significant disc bulging, and a widely patent spinal canal and neuroforamen. R. 582. Maxine followed up with Ms. Chantal on February 27, 2015, reporting persistent lower back and left leg pain not alleviated by narcotic medication.

7

R. 579. Ms. Chantal reviewed the MRI, which showed no acute process, normal disc height and integrity, no gross nerve impingement, and facet arthritis in the distal lumbar spine. Id. Ms. Chantal stated that she was "not sure what else we have to offer." Id. Maxine did not seek medical intervention for her back or left leg for eleven months.

Maxine saw Dr. Algeier on January 6, 2016 for lower back pain, abdominal pain, and hypertension. R. 613. Dr. Algeier found Maxine to be diffusely tender in her lower lumbar area bilaterally. R. 614.

On March 21, 2016, Maxine saw Johanne Personna-Policard, M.D., reporting leg pain without weakness and an unsteady gait. R. 1143. Dr. Personna-Policard found normal range of motion in both knees, no joint deformities, no muscle spasms or tenderness, and full strength in Maxine's legs. R. 1144. Dr. Personna-Policard found that Maxine had a mildly unsteady gait, but walked without assistance. Id. Dr. Personna-Policard believed that Maxine likely has progressive generalized neuropathy. R. 1145.

An MRI of Maxine's cervical spine performed on April 4, 2016 showed mild cervical degenerative changes with no compromise of the central canal, low grade narrowing of the C5-6 and C6-7 neural foramen, mild syringohydromyelia of the upper thoracic cord at T2-3 with no associated cord lesion or abnormal cord enhancement, and dominant right lobe thyroid nodule. R. 1147.

**Use of a Cane**

Maxine argues that the ALJ erred by failing to incorporate her need for a cane into the RFC.

SSR 96-9p provides that:

> [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a

> hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-9p. "[E]ven if a cane is prescribed, it does not necessarily follow that it is medically required." Wimbush v. Astrue, No. 4:10CV00036, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011). What is required is "an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." Johnson v. Berryhill, 2017 WL 722063, at *9 (W.D. Va. Feb. 23, 2017) (quoting Tripp v. Astrue, 489 Fed. Appx. 951, 955 (7th Cir. 2012)).

The ALJ provided a detailed narrative discussion of the medical record that included citations to the December 2013 surgery, the follow up appointments after surgery, and all subsequent appointments that dealt with Maxine's left leg pain. The ALJ explained that:

> [t]he evidence of record does not demonstrate that [Maxine] requires a cane for standing and/or walking. Instead, the record shows that [Maxine] was prescribed a cane in December 2013, shortly after her left knee surgery; however, there is no indication that the use of such would be permanent. Moreover, on examination just one month after her surgery, [Maxine's] gait was described as normal and non-antalgic. On her most recent examination of record, [Maxine's] gait was described as mildly unsteady and she ambulated without assistance.

R. 36.

Dr. Barnard prescribed a cane two weeks after Maxine underwent surgery on her left knee to repair a torn meniscus because she had pain and swelling in her left knee post-operation. One month after the surgery, Maxine walked normally. Thereafter, Maxine had normal physical examinations of her legs, including a normal range of motion, no joint deformities, no muscle spasms or tenderness, and full strength in her legs. Indeed, at Maxine's most recent appointment

in March 2016, she had a mildly unsteady gait but did not use a cane to walk. No physician indicated that a cane was medically necessary.

Maxine has presented no evidence that the cane prescribed almost two-and-a-half years before her administrative hearing is medically necessary. The objective medical evidence shows that Maxine has persistent pain in her left leg, but no issues upon physical examination. I find that substantial evidence supports the ALJ's finding that a cane is not medically necessary for Maxine. Therefore, the ALJ committed no error in excluding any mention of an assistive device in the RFC.

**Maxine's Subjective Allegations**

Maxine claims that the ALJ improperly determined that her subjective allegations were inconsistent with the objective medical evidence. Specifically, Maxine alleges (1) the ALJ's statement that her daily activities cannot be objectively verified is legally impermissible, (2) the ALJ should have accepted her subjective allegations—and exclusively her subjective allegations—because the ALJ found that her medically determinable impairments could reasonably produce her alleged symptoms; and (3) the ALJ improperly placed the burden of proof on her when he explained that her alleged limited daily activities are not supported by the treatment notes of any physician.[3]

In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements (SSR 96-7p), and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p. "[W]e are eliminating the use of

---

[3] Maxine is incorrect that the burden was improperly placed on her by the ALJ. The burden was already placed on her, as the ALJ evaluates the consistency of a claimant's allegations at Step Three of the five-step process. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) ("The applicant bears the burden of production and proof during the first four steps of the inquiry. If he or she is able to carry this burden through the fourth step, the burden shifts to the [Commissioner] in the fifth step to show that other work is available in the national economy which the claimant could perform.").

the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. However, "although SSR 16-3p eliminates the assessment of credibility, it still requires assessment of most of the same factors to be considered under SSR 96-7p." Kim v. Comm'r, Soc. Sec. Admin., No. 9:16-0823-BM, 2017 WL 2912414, at *4 n.10 (D.S.C. July 7, 2017).

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and the ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A claimant's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. § 404.1529. If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p.

In her function report dated December 13, 2013, Maxine reported constant aching, stabbing, throbbing, and cramping pain in her lower back, hip, buttocks, arms, and legs. R. 214. Maxine explained that the pain is exacerbated by standing, walking, or sitting for long periods of time. Id. Maxine stated that her pain affects everything she does. R. 215. Maxine explained that her pain medications help but cause dizziness and lightheadedness. Id. Maxine stated that she is able to work, take care of her granddaughter, and do chores around her house. R. 229. Maxine is able to prepare simple meals, do laundry, drive a car short distances, shop for groceries and

clothes, watch television, play with her granddaughter, and take her granddaughter to school. R. 229–33. Maxine stated that she has difficulty lifting, squatting, bending, standing, reaching, waking, sitting, kneeling, and climbing stairs. R. 234. Maxine explained that she cannot lift anything weighing more than five pounds and can only walk halfway across a room before requiring a break to rest. R. 234.

Maxine testified at the administrative hearing that she stopped working in June 2013 because she fell down the stairs. R. 51. Maxine stated that she went back to work, but was fired because she missed a meeting due to her house catching fire. R. 52. Maxine explained that she has problems walking and standing, but that she could return to work at less than 100 percent effectiveness. R. 53. Maxine stated that she can only stand for three minutes before having to sit. Id. Maxine testified that her medications make her sleepy, that she can lift only four or five pounds comfortably, and that she can only walk half a city block with a cane. R. 55.

The ALJ provided a detailed narrative discussion of Maxine's subjective complaints in her function report and administrative hearing testimony, as well as the objective medical evidence of Maxine's left leg pain, lower back pain, and right shoulder pain. The ALJ found that Maxine's subjective allegations in her function report and in her testimony at the administrative hearing were inconsistent with the objective medical evidence.

The ALJ explained that after Maxine's surgery on her left knee, physical examination findings were consistently normal, as Maxine was able to walk normally without an assistive device. R. 33. The ALJ explained that treatment for Maxine's back and right shoulder impairments was routine and conservative. Id. The ALJ explained that injections in Maxine's shoulder were effective in combating her pain. Id. Regarding both Maxine's back and shoulder impairments, the ALJ explained that "[t]he lack of more aggressive treatment or surgical

intervention suggests [Maxine's] symptoms and limitations are not as severe as she alleges." Id.; see also Dunn v. Colvin, 607 Fed. Appx. 264, 275 (4th Cir. 2015) ("[I]t is well established in this circuit that the ALJ can consider the conservative nature of a claimant's treatment in making a credibility determination.").

The ALJ found it significant that Maxine returned to work during the relevant period and that she lost her job not because of her claimed disability, but because she missed a mandatory meeting. R. 33. The ALJ explained that Maxine's allegedly limited activities are not supported by the objective medical evidence and that "no physician, treating or otherwise, has ever indicated that there is any medical reason why [Maxine's] activities should be so limited." Id.

Maxine is correct that a claimant's daily activities do not have to be "objectively verified" by the ALJ. See Kendle v. Colvin, No. 3:16–CV–27, 2016 WL 7337147, at *21 (N.D. W. Va. Nov. 30, 2016) ("The Commissioner does not argue, nor is there any requirement, that a plaintiff's daily activities must be 'objectively verified' by the ALJ."). The court in Kendle was perplexed by the ALJ's assertion that the claimant's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." Id. at *21. Here, that line appears verbatim in the ALJ's opinion. See R. 33. The Kendle court explained that the ALJ, without citing specific reasons, "appears to admit that Plaintiff's daily activities are quite limited, but simply declines to believe that they are in fact so limited—or, in the alternative, that the reason they are so limited is unrelated to her medical conditions." Kendle, 2016 WL 7337147, at *20. The court chided the ALJ for failing to elaborate, and explained that the ALJ's statement is "unclear." Id. at *21.

Here, the ALJ sufficiently elaborated. The ALJ provided a detailed narrative, and cited all the relevant medical evidence in his discussion. The ALJ explained that no physician found that

13

Maxine was so impaired such that her reports of extremely limited daily activities were corroborated. While the ALJ may use "unclear" language, he was able to construct a logical bridge from the evidence to his conclusion such that it permits meaningful judicial review. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion") (quoting (Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [Commissioner]. . . . The [Commissioner] must present us with findings and determinations sufficiently articulated to permit meaningful judicial review.").

Maxine argues that the Fourth Circuit's opinions in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), and Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), stand for the proposition that once an ALJ finds that a claimant's medically determinable impairments could reasonably produce the claimant's alleged symptoms, the ALJ is required to accept the claimant's subjective allegations. Maxine is mistaken. In Craig, the Fourth Circuit stated that when evaluating a claimant's subjective allegations, the regulations require the ALJ to:

> take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (internal citations omitted). In Hines, the Fourth Circuit quoted Craig to explain that:

14

> objective medical evidence and other objective evidence are . . . crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. . . . Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Hines, 453 F.3d at 566 n.3 (quoting Craig, 76 F.3d at 595). Thus, there is no requirement that an ALJ accept a claimant's subjective allegations simply because her medically determinable impairments could reasonably produce the alleged symptoms. It is quite the opposite. The regulations and the case law require the ALJ to evaluate all the evidence—objective and subjective—when determining whether a claimant's medically determinable impairments could reasonably produce the alleged symptoms. Here, the ALJ did exactly that.

I must defer to the ALJ's assessment of the consistency of a claimant's subjective allegations with the record and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)). I find that the ALJ's determination of the consistency of Maxine's statements regarding the severity of her symptoms in light of the objective medical evidence is supported by substantial evidence.

## **RECOMMENDED DISPOSITION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Maxine's claim for benefits and in determining that her physical and mental impairments would not significantly limit her ability to do a range of light work. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Maxine's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 13, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge